J-S66033-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
JAMES WILLIAM BRANCH, :
:
Appellant : No. 759 WDA 2015

Appeal from the Judgment of Sentence Entered April 1, 2015,
in the Court of Common Pleas of Allegheny County,
Civil Division at No(s): CP-02-CR-0008065-2014

BEFORE: OLSON, STABILE, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.: **FILED DECEMBER 09, 2015**

James William Branch (Appellant) appeals the judgment of sentence imposed after he was convicted of two counts of aggravated assault and one count of resisting arrest. We affirm.

We offer the following summary of the evidence produced at the non-jury trial on April 1, 2015. The events leading up to the charges against Appellant occurred in the early morning hours of May 9, 2014 in an area of McKeesport that was considered a "high crime, high drug area." N.T., 4/1/2015, at 16. A police officer observed a "large amount of marijuana [in a van located] in the 1600 block of Soles Street." *Id*. A woman came out of a nearby residence claiming it was her van. A man went fleeing from the

---

* Retired Senior Judge assigned to the Superior Court.

back of the residence. The officers in the area set up a perimeter in the blocks surrounding that area.

While setting up the perimeter, Officer Floyd Gault became aware of a "disturbance" nearby. *Id*. at 13. Specifically, he "observed a man put his head through the [front] window of a house" resulting in a broken window. *Id*. He classified the disturbance as being "a fight or something of that nature." *Id*. at 14. Officer Gault radioed for backup. Officer Gault approached the house and saw a man, later identified as Andre Wiggins, come out of the side door. Officer Gault pointed his gun at Wiggins and "ordered him to the ground where he was detained in handcuffs." *Id*. at 16. Wiggins told police that "his mother's boyfriend[, later identified as Appellant,] was causing the disturbance." *Id*. at 17. Another police officer was in the front of the house and saw a man, later identified as Appellant, inside the house holding a female, later identified as Yvonne Delphine Rini-Wiggins, "in a chokehold." *Id*. Officer Derek Stitt observed Appellant with his hands around Rini-Wiggins' neck and she was "screaming." *Id*.

Several police officers, including Officer Gault, proceeded to knock on the front door of the house. Eventually, Appellant came to the door. According to Officer Gault, Appellant exhibited "an aggressive manner" and the other police officer "performed a takedown maneuver." *Id*. at 18. Officer Gault testified that Appellant "had obvious injuries from putting his head through the window." *Id*. at 19. After the other police officer

performed the takedown maneuver, Officer Gault informed Appellant he was under arrest for "simple assault, domestic violence." *Id*. at 20. Officer Gault then testified Appellant "immediately started fighting with officers, flailing around the whole entire time, his hands, his feet. Several officers were struck." *Id*. Appellant also kept saying, "[I]s this all you guys got[?]" *Id*.

Officer Gault testified that he was struck during this incident. He also testified that the three other officers present were struck. According to Officer Gault, the incident lasted "probably 15 minutes." *Id*. at 21. Once Appellant was safely in custody, which occurred after ten minutes of trying to get Appellant into the police vehicle, Appellant was transported to UPMC McKeesport for treatment of head injuries. Rini-Wiggins met officers at the hospital. Officer Gault testified that he observed "redness maybe to her neck[.]" *Id*. at 40.

Rini-Wiggins testified for the defense. She testified that she called to her son because she believed somebody was breaking into the home. She heard a "crash of glass" and then she stepped on glass as she was opening the front door. *Id*. at 81. Appellant came to the front door and was "snatched backwards" by a police officer. *Id*. at 83. She further testified that she had not been assaulted by anyone in the home. Additionally, she testified that Appellant did not assault any of the police officers and that Appellant was "totally unconscious." *Id*. at 90. She testified that at one

point Appellant had his arms around her because they were "praying" because she believed they were going to die. *Id*. at 78.

Appellant testified that he was disabled and had limited mobility due to two accidents which resulted in surgery. Appellant testified that he and Rini-Wiggins were "in the bedroom having … cortis, coitus, whatever" when they heard someone trying to break into the house. *Id*. at 141. The two went downstairs, Appellant put his arms around Rini-Wiggins in prayer, and then they saw glass break. Appellant tried to stop Rini-Wiggins from opening the front door because he did not know who was outside. Appellant then testified that he was "snatched" when he opened the door, then "thrown to the ground," "kicked," and "punched." *Id*. at 145. Appellant further testified that he "was tased to the point where [he lost] consciousness." *Id*.

Appellant was charged with four counts of aggravated assault,[1] one count of simple assault,[2] and one count of resisting arrest. Prior to trial, the Commonwealth added a count of disorderly conduct to the criminal information. On April 1, 2015, Appellant proceeded to a non-jury trial on all charges. The trial court found Appellant guilty of two counts of aggravated assault and one count of resisting arrest. Appellant was found not guilty on

---

[1] The four officers were the victims with respect to these charges.

[2] Rini-Wiggins was the victim with respect to this charge.

- 4 -

two counts of aggravated assault,[3] simple assault, and disorderly conduct. Appellant was sentenced the same day to a term of two years of probation on each count of aggravated assault to run concurrently to each other. Appellant was not penalized further for the resisting arrest conviction.

Appellant timely filed a post-sentence motion which was denied by the trial court. Appellant timely filed a notice of appeal. The trial court ordered Appellant to file a concise statement of errors complained of on appeal. Appellant timely filed a concise statement, and the trial court issued an opinion.

On appeal, Appellant challenges both the weight and sufficiency of the evidence to sustain his convictions. However, before we reach Appellant's arguments, we consider the trial court's conclusion that Appellant has waived these issues on appeal. The trial court suggests that Appellant's concise statement, which generally challenges the sufficiency and weight of the evidence, "falls short of what is required in a 1925(b) statement." Trial Court Opinion, 7/6/2015, at 4. The trial court states that Appellant's

> bald allegations concerning sufficiency and weight of the evidence do not provide any guidance as to which elements were lacking proof and how the weight of the evidence did not support the verdict rendered in this case. These allegations are too vague and … this [c]ourt believes that these issues are waived for appellate review.

*Id*.

---

[3] These two counts were with respect to the two police officers who testified at trial. The Commonwealth did not call the other two police officers to testify.

"In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." **Commonwealth v. Garland**, 63 A.3d 339, 344 (Pa. Super. 2013). However, given the straight-forward nature of this case, we decline to find waiver. **See Commonwealth v. Laboy**, 936 A.2d 1058 (Pa. 2007) (reversing Superior Court's finding of waiver based upon lack of specificity in concise statement where review was not hampered thereby). Nonetheless, upon examination of his arguments, it is clear that Appellant is entitled to no relief.

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[-]finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. … Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Helsel**, 53 A.3d 906, 917-18 (Pa. Super. 2012) (quoting **Commonwealth v. Bricker**, 41 A.3d 872, 877 (Pa. Super. 2012) (citations omitted)).

Instantly, Appellant was convicted of both aggravated assault and resisting arrest. We examine Appellant's arguments with respect to each one, beginning with resisting arrest.

"A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S. § 5104. "[A] valid charge of resisting arrest requires an underlying lawful arrest, which, in turn, requires that the arresting officer possess probable cause." *Commonwealth v. Hock*, 728 A.2d 943, 946 (Pa. 1999).

Appellant contends that because the arrest was not lawful, the evidence was insufficient to sustain this conviction. Appellant's Brief at 16. Specifically, Appellant suggests that because Officer Gault did not see "[Appellant] choking anyone," there was no probable cause to arrest him. *Id*. at 17.

"The police have probable cause where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *Commonwealth v. Hernandez*, 935 A.2d 1275, 1284 (Pa. 2007). Moreover, "a person is guilty of assault if he … attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." 18 Pa.C.S. § 2701(a)(1).

Officer Rich testified that he observed Appellant choking Rini-Wiggins. He testified that he saw Appellant's hands "[r]ight around her neck." N.T.,

4/1/2015, at 47. He testified that the choking lasted "[s]everal seconds[.]" *Id*. Based on this testimony, the evidence was sufficient to establish that the police officers had probable cause to believe Appellant committed simple assault and therefore had authority lawfully to arrest Appellant.

Appellant also argues that the evidence was insufficient to sustain his conviction for aggravated assault. Specifically, he argues that the testimony from the Commonwealth's witnesses was inconsistent and that Appellant lacked the requisite intent to commit this crime. Appellant's Brief at 18.

"A person is guilty of aggravated assault if he … attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty[.]" 18 Pa.C.S. § 2702(a)(3). A police officer is one such person. *Id*. at (c)(1). Moreover, in "a prosecution for aggravated assault on a police officer the Commonwealth has no obligation to establish that the officer actually suffered a bodily injury; rather, the Commonwealth must establish only an attempt to inflict bodily injury, and this intent may be shown by circumstances which reasonably suggest that a defendant intended to cause injury." *Commonwealth v. Brown*, 23 A.3d 544, 560 (Pa. Super. 2011).

Instantly, both Officer Gault and Officer Rich testified that Appellant repeatedly struck them while they were trying to arrest Appellant and get him into the police car. Accordingly, the evidence was sufficient to sustain

this conviction. **See Brown**, **supra** (holding that appellant attempted to cause bodily injury to police officer who was arresting him when he flailed his arms and struck the officer repeatedly).

With respect to both convictions, Appellant also challenges the weight of the evidence. Appellant's Brief at 19-20.

> The decision of whether to grant a new trial on the basis of a challenge to the weight of the evidence is necessarily committed to the sound discretion of the trial court due to the court's observation of the witnesses and the evidence. A trial court should award a new trial on this ground only when the verdict is so contrary to the evidence as to shock one's sense of justice. A motion alleging the verdict was against the weight of the evidence should not be granted where it merely identifies contradictory evidence presented by the Commonwealth and the defendant. Our review on appeal is limited to determining whether the trial court abused its discretion in denying the motion for a new trial on this ground.

**Commonwealth v. Chamberlain,** 30 A.3d 381, 396 (Pa. 2011) (citations omitted). "Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record." **Commonwealth v. Handfield**, 34 A.3d 187, 208 (Pa. Super. 2011) (quoting **Commonwealth v. Cain**, 29 A.3d 3, 6 (Pa. Super. 2011)).

We do not have the benefit of an opinion from the trial court in this case; however, the trial court did offer its rationale for its verdict on the record. With respect to its verdict for aggravated assault, the trial court set forth the following.

Two officers testified about this matter in a way that in the [trial court's] view establishes aggravated assault. Remember, on a police officer aggravated assault is simple assault on a police officer who's acting in accordance with his duties. It's not the old aggravated assault which requires serious bodily injury. That still exists for non-police officers and other non-specified persons. So this was a chaotic situation. I want the Commonwealth's witnesses and the Commonwealth's attorney to listen to me. Because of the chaos that everybody agrees happened in this case in one form or another, the [trial court] has reasonable doubt as to the officers who did not testify. I'm not saying that it didn't happen to them or did happen to them. I'm saying that because of the chaos involved in this, that an officer who says we were all in this free-for-all, I accept that's what happened from his point of view, but that same officer can't say and so Officer Jones who didn't testify, unless he says I saw [Appellant] actually strike him in the face and cause him bodily injury, unless he says something that specific, I have a reasonable doubt as to those counts.

Accordingly, we heard from Officer Gault, and we heard from Officer … Rich. But as to Officer Stitt and Officer Eastman, I did not hear from them specifically as to what their roles were in this, it causes me to have doubt.

N.T., 4/1/2015, at 182-83.

Thus, the trial court found Appellant guilty of aggravated assault with respect to the two officers who testified and not guilty of aggravated assault with respect to the two officers who did not testify. Because this was a non-jury trial and because the trial court denied the post-sentence motion, the verdict clearly did not shock the trial court's sense of justice. We discern no abuse of discretion in its conclusion.

With respect to Appellant's resisting arrest conviction, the trial court offered the following.

- 10 -

Now, the officers only need probable cause to make the arrest, even if it turns out that that is not what happened, the officers have probable cause at the time they decide there's a reason to make an arrest. They hear a commotion in this house. I do not accept that they just picked this house out of the blue to start a problem with somebody who[] lived in that house. I don't accept that. They're looking for a bad guy involved with drugs. They're on a stakeout in a sense waiting to see if he comes in their direction. They hear a problem, they hear voices. They probably hear, if there's some consistency here, [Appellant] yelling there's somebody trying to break in. They probably hear it. … They probably hear Miss Rini-Wiggins screaming oh, my God, we're going to die. They look in and see [Appellant] with his hands around her neck, not choking perhaps, but it looks like it. What in the heck is going on here. We got a domestic. What do they do, walk away? They're not going to do that and they're not allowed to do that. So they say there's something going on, that's not what we're here for, but there's something going on here. We have to act, we're required to act. So they tried to do their jobs at that point. They had probable cause to pursue it and it's their duty to pursue that if they think a man is beating up on a woman. Turns out that probably wasn't what was happening. But it sure sounded like it and looked like it to them. So they did their duty.

\*\*\*

[Appellant] resisting. There's no way they're going to tase him and take ten to 15 minutes to beat the crap out of him as your witness said on the front porch if he's unconscious during that time. They're just not. It's unreasonable for the [trial court] to conclude these officers are going to keep pounding on a guy who's unconscious. It's unreasonable. He was fighting, maybe he didn't see they were police, maybe he did. Hard to say. But they were announcing, his own other witnesses saw them as police officers in uniform. So from the [trial court's] point of view, I don't find it credible that he doesn't know he's dealing with police. … So [Appellant] resisted, in my view, a lawful arrest. He fought with two police offers who testified, he's guilty of aggravated assault as to those two police officers and resisting arrest.

*Id*. at 184-86.

- 11 -

Once again, because this was a non-jury trial and because the trial court denied the post-sentence motion, the verdict clearly did not shock the trial court's sense of justice. We discern no abuse of discretion in its conclusion. Thus, there is no basis for this Court to conclude that the verdict was against the weight of the evidence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/9/2015