J-S26007-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CAREY BILLUPS | : | No. 2524 EDA 2017 |

Appeal from the Order July 31, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0014851-2013

BEFORE:   BENDER, P.J.E., BOWES, J., and STEVENS*, P.J.E.

CONCURRING AND DISSENTING MEMORANDUM BY BOWES, J.:        **FILED**

**SEPTEMBER 19, 2018**

I agree with my esteemed colleagues that the trial court did not abuse its discretion when it denied the Commonwealth's motion for recusal. However, I would hold that the Commonwealth did not waive its challenge to the trial court's order granting Appellee's suppression motion, and that the order should be reversed.

My review of the record reveals the following facts of import.  Appellee did not file a written suppression motion.  Rather, he made a motion orally at the time the case was scheduled for trial:

> Your Honor, for the record this is a motion to suppress the [out-of-court] identification . . . made of [Appellee] by the Commonwealth's witness back on August 23, 2013.  It was actually made early morning on the 24th, so I'm going to include both just to cover my butt for the identification.

---
*   Former Justice specially assigned to the Superior Court.

The bottom line is this, Your Honor, under the Fourth and Fourteenth Amendments of the Federal Constitution and the Broader Protections afforded under Article 1, Section 9, the police officers, when they encountered Mr. Billups, had no reason to stop him whatsoever. There was no reasonable suspicion and certainly no probable cause prior to this unconstitutional identification.

The bottom line is this: my client is standing outside. Something happens somewhere else. Officers, based on what they hear on the radio call and what they had, see my client with friends, and they stopped him. I'm arguing to the Court that at the point of interaction, the Constitutional, both State and Federal, require some level of suspicion -- a reason to stop him and investigate these gentlemen. They didn't fit any flash that came out. Nothing in their actions when the officers encountered them led them to believe they were engaged in criminology. No one ran. No one was belligerent. Everyone cooperated and did what they were told to do by the police officers.

The Commonwealth has a burden to demonstrate at that point, the moment of the interaction, that a seizure didn't occur. I'm not suggesting to the Court that police officers do not have a right to stop and investigate, but you have to generate and articulate the reason for that investigation. I submit to this Court, there was none, as it related to the interaction between [Appellee] and the police officers.

What I'm asking the Court to suppress is the out-of-court identification made by the complainant, and obviously I'm going to ask you to also consider suppressing the in-court identification. As you know, the standard for that is, even if the Court agrees with me and suppresses the out-of-court identification, if the Commonwealth could put forth independent reasons as to why the complainant would have been able to identify my client anyway, then, of course, you could ignore my request and let the in-court stand.

I submit to the Court that there was no photographic array made that night, no photographic identification made. The only identification was right there on the street. She had no opportunity to see him after that fact until she came to court and no contact with my client at all prior to that. So there would not be any independent basis for that in-court ID to stand, if the Court would have granted my motion. I'm asking you to include, within

my things that I'm asking to suppress, both the in-court and out-of-court identification of my client.

N.T., 5/31/15, at 3-5. At the conclusion of the second hearing on the motion, Appellee, through counsel, reiterated the bases for the motion to suppress:

> If the Court recalls the grounds for my motion, I challenged the reasonable suspicion that the officers would have had to stop my client, the lack of criminal activity as it relates to my client and the two cohorts that were with him at the time the officer observes him, and the Lieutenant's testimony right now based on some vague description.

N.T., 12/31/15, at 28. Appellee contended that the stop violated his constitutional rights, and that, therefore, the trial court should "suppress the identification and everything that flow[ed] there[from]." *Id*. at 36.

> The trial court made the following ruling on the record.

> The police never called the complaining witness. The husband called the complaining witness, which leaves me to believe why would the complaining witness say the police called her. And when the husband called her it's more likely than not he said, "Hey, the guy that robbed your purse is down here and the police have him." It shines a light, not maybe intentionally, but the complaining witness wasn't being truthful in how she got to the scene and what she was expecting when she got there.

> Based on that and her own testimony of the vagueness of why she picked this defendant out and that she did expect the defendant to be there and that it was her husband who called her and gave her the information as to what to expect when she got there and what was waiting there because the Lieutenant didn't stay with the husband when he called her, I find that her testimony was skewed and it's not believable from the point of view of making a good identification and I grant the motion to suppress.

*Id*. at 47-48.

The Commonwealth immediately noted that "the basis for Your Honor's ruling is not what this motion is about. The motion is whether the out-of-court identification was unduly suggestive." *Id*. at 48. The trial court responded "And I find it is." *Id*. at 49. The trial court elaborated as follows.

> I find that it is because for first time today I learned the police did not call this complaining witness in an unsuggestive tone and tell her to come down and make an identification of three males. I found out today that the husband called in a false police report of three men with a gun involving a white Infiniti that had no testimony of prior involvement into this –
>
> . . . .
>
> I found that for the first time coming out, I was actually taken aback with shock. The husband called the complaining witness and told her to come down and why to come down. That's highly suggestive in and of itself. He's out on the street searching for these people. He wasn't even at the scene and the description she gave prior to that was speculative at best. So I find that the husband's involvement, making the call to bring her down with her own answer to the question was, did you expect to find the person there when you got there is absolutely, "Yes." I find that . . . she wasn't honest when she testified.

*Id*. at 49-50.

This Court reversed, noting that the record contained no evidence of the substance of the conversation between the complainant and her husband, and, thus, nothing to support the trial court's suggestion that the husband tainted the complainant's identification. *Commonwealth v. Billups*, 170 A.3d 1244 (Pa.Super. 2017) (unpublished memorandum at 8). During the proceedings following this Court's remand, the trial court indicated that its "ruling in this case was totally and only based on the lack of credibility of the

complaining witness." N.T., 7/31/17, at 4. After detailing the specific testimony it disbelieved, the court reiterated:

> my ruling on this is the motion to suppress was based solely and only on the lack of credibility of the complaining witness and that's why the motion to suppress was granted and that's why it is still granted, and if there's any problem with that, then you're free to take it back for an appeal.

*Id*. at 5.

The Commonwealth indeed filed another appeal, claiming in its voluntarily-filed 1925(b) statement that the trial court "erred in re-imposing its order suppressing identification evidence[.]" Statement of Errors Complained of on Appeal, 8/8/17. In its Rule 1925(a) opinion, the trial court merely rehashed the evidence and stated without reference to any legal authority that it did not err in granting suppression because "The circumstances surrounding Mrs. Briggs's identification of Appellee is highly suggestive when viewed in tandem." Trial Court Opinion, 10/19/17, at 11.

The Commonwealth argues before this Court that the ruling was in error because the record contains no indication that the police did anything to suggest to the complainant that Appellee, rather than one of the other men present for the on-scene lineup, was the person who stole her purse. Commonwealth's brief at 12. The learned majority finds the claim waived because the Commonwealth did not adequately identify it in its Rule 1925(b) statement. Majority memorandum at 9. I disagree.

As the above quotations from the record reveal, both Appellee and the Commonwealth have maintained all along that the suppression motion was

based upon the alleged violation of Appellee's constitutional rights by an unduly-suggestive police lineup. The Commonwealth raised the issue it argues on appeal before the trial court, and it is the obvious basis for its statement that the trial court erred in again granting the suppression motion. Accordingly, I would hold that the issue is preserved for our review. *See* Pa.R.A.P. 1925(b)(4)(v) ("Each error identified in the Statement will be deemed to include every subsidiary issue contained therein which was raised in the trial court[.]"); *see also Commonwealth v. Laboy*, 936 A.2d 1058, 1060 (Pa. 2007) (holding Superior Court erred in finding waiver of sufficiency challenge based upon insufficiency specific statement in straightforward case with small evidentiary record).

Turning to the merits of the issue, it is clear from the record that the trial court's basis for granting suppression had absolutely nothing to do with any violation of Appellee's constitutional rights.

"Suggestiveness arises when **the police** employ an identification procedure that emphasizes or singles-out a suspect." *Commonwealth v. Davis*, 17 A.3d 390, 394 (Pa.Super. 2011) (emphasis added). "A primary aim of excluding identification evidence obtained under unnecessarily suggestive circumstances is to deter law enforcement use of improper procedures in the first place. This deterrence rationale is inapposite in cases, like [the instant case], where there is no improper police conduct." *Perry v. New Hampshire*, 565 U.S. 228, 241 (2012). Stated another way, "the purpose of a suppression order regarding exclusion of identification evidence is to prevent

improper police action. Thus, **where a defendant does not show that improper police conduct resulted in a suggestive identification, suppression is not warranted**." *Commonwealth v. Lark*, 91 A.3d 165, 168-69 (Pa.Super. 2014) (emphasis added).

In the absence of undue suggestiveness, disbelief of a lay witness is no reason to suppress an identification. *See*, *e.g.*, *Perry*, *supra* at 248 ("[T]he Due Process Clause does **not** require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances **arranged by law enforcement**.") (emphases added); *Commonwealth v. Fulmore*, 25 A.3d 340, 347 (Pa.Super. 2011) (explaining that the trial court's ruling "confuses the credibility of the identification with a claim of undue suggestiveness").

As the record in this case does not support a finding that any state actor improperly influenced the complainant's identification of Appellee, there is no legal basis to suppress that identification. Therefore, I would reverse the order granting Appellee's suppression motion and remand the case for trial, at which the fact finder may decide whether the complainant's identification of Appellee is worthy of belief.