J-S22016-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MICHAEL B. JOVICH :
:
Appellant : No. 309 MDA 2021

Appeal from the Judgment of Sentence Entered September 9, 2020
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  CP-38-CR-0000070-2019

BEFORE:   PANELLA, P.J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McCAFFERY, J.:                 **FILED OCTOBER 12, 2021**

Michael B. Jovich (Appellant) appeals from the judgment of sentence entered in the Lebanon County Court of Common Pleas following his jury convictions of two counts each of statutory sexual assault and indecent assault, and one count each of endangering the welfare of a child and corruption of a minor.[1]  Appellant challenges the weight and sufficiency of the evidence supporting each of his convictions.  This appeal returns to this panel after remand for the filing of a trial court opinion.  We now affirm.

Between March and September of 2018, Appellant lived with H.S. and her four children, M.S., G.S. (Victim), A.A., and R.O.  N.T., Jury Trial, 6/18/20, at 7, 38-39.  Towards the end of March 2018, Appellant began to engage in

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3122.1(b); 3126(a)(8); 4304(a)(1); 6301(a)(1)(ii).

"vaginal and oral intercourse" with Victim. *Id.* at 40-42. During this time period, Victim was between 14 and 15 years old, and Appellant was between 34 and 35 years old; Appellant was aware of Victim's age. *Id.* at 40, 84. H.S., Victim's mother, called the police in December of 2018, after observing Victim and Appellant engaging in sex on a "nanny cam" video. *See id.* at 23-24.

Appellant was subsequently charged with three counts each of statutory sexual assault and indecent assault, and one count each of endangering the welfare of a child and corruption of a minor. This case proceeded to trial on June 18, 2020, where the Commonwealth presented the following evidence.

M.H., H.S.'s boyfriend at the time, testified at trial that in the summer of 2018 he set up a nanny cam in the living room of his apartment. N.T., Jury Trial, at 8-9. In August 2018, H.S. and her four children, including Victim, stayed at M.H.'s apartment. *Id.* at 8, 13. In December 2018, M.H. was reviewing video footage from his nanny cam, when he saw footage of Appellant and Victim that caused him "concern." *Id.* at 10. M.H. immediately emailed the video to H.S. *Id.* at 11. At trial, the Commonwealth played this footage for the jury.[2] *Id.* at 14.

---

[2] The Commonwealth did not elicit testimony regarding the incident depicted in the video footage, but the trial court stated in its opinion that the "acts involved kissing, inappropriate fondling, and the exposure of [Appellant's] genitals. At one point, [Victim] dropped to her knees so that her face was directly at [Appellant's] pelvis region; however [it] is not entirely clear what she is doing due to the angle of the recording." Trial Ct. Op., 1/26/21, at 2 (unpaginated).

Victim testified at trial that Appellant moved into her home in mid-March of 2018, and they started engaging in sexual activity "[t]oward the end of March." N.T., Jury Trial, at 39, 41. Victim stated the first time they had "vaginal and oral intercourse" was on her mother's bed. *Id.* at 42. She testified that they then engaged in sexual activity in "[m]ultiple places inside and outside[,]" including, her home, M.H.'s apartment, Appellant's brother's home, Appellant's parent's home, and during a camping trip "on the Appalachian Trail[.]" *Id.* at 44-45. Victim recounted one instance where Appellant "picked [her] up by [her] neck and threw [her] down on the couch and proceeded to have sex with [her] after [she] told him no." *Id.* at 51. However, she also testified Appellant did not force her to have sexual contact with him "every time." *Id.* at 56-57. Appellant told Victim to keep their "relationship" a secret because if Victim "ever told anyone [her mother] would have him put away for a long time." *Id.* at 53. Victim stated she was aware Appellant had a girlfriend, M.P., and she and Appellant would argue about M.P. *Id.* at 61, 63. Victim testified that she asked Appellant to move out of her home, which he did, and although they continued having contact after he left, the last time she and Appellant had "sexual relations" was in September of 2018. *Id.* at 46-47, 50.

Victim's mother testified that, after receiving the video footage from M.H., she confronted Victim, who admitted having had a sexual relationship with Appellant. N.T., Jury Trial, at 24. Victim's mother reported the incident to police. *Id.* at 22-23. Victim was subsequently interviewed by the Children's

Resource Center (CRC), and she acknowledged the sexual contact she had with Appellant. *Id.* at 57.

M.S., Victim's brother, testified that he witnessed "unusual" contact between Appellant and Victim while Appellant lived in his home in 2018. N.T., Jury Trial, at 71-72. M.S. saw Appellant and Victim "spooning" under a blanket in Appellant's bed. *Id.* at 72. Upon seeing M.S., Appellant "immediately jump[ed] up and [Victim] immediately started defending herself." *Id.* M.S. also stated it was "odd" that Appellant and Victim were "always" alone "in different areas of the house[,]" while camping, and during car rides "two to three times a week." *Id.* at 72-73.

Appellant's father, N.J., and his girlfriend, M.P., testified on his behalf. Appellant's father testified he never saw Appellant and Victim "kissing or engaging in sexual activity" or doing anything to suggest a sexual relationship. N.T., Jury Trial, at 90, 92. M.P. testified Victim told her Appellant was cheating on her and, during a camping trip, tried to hold Appellant's hand, but Appellant pulled away. *Id.* at 99-100. M.P. never saw Appellant "try to initiate any sort of physical contact" or "flirt[ ]" with Victim. *Id.* at 100.

After the trial concluded, the jury found Appellant guilty of two counts each of statutory sexual assault and indecent assault, and one count each of endangering the welfare of a child and corruption of a minor, and not guilty of the remaining counts. On September 9, 2020, the trial court sentenced Appellant to an aggregate term of 6 1/2 to 20 years' incarceration, followed by 6 years' probation. Appellant filed a timely post-sentence motion,

challenging the weight and sufficiency of the evidence supporting his convictions, which the trial court denied on January 26, 2021. Appellant then filed a timely notice of appeal.

Thereafter, counsel for Appellant filed a Pa.R.A.P. 1925(b) statement six days past the court-ordered deadline, and the trial court entered an order deeming all of Appellant's claims waived on appeal. *See* Order, 3/26/21. When this appeal first appeared before this panel, we remanded for the filing of a responsive trial court opinion pursuant to Pa.R.A.P. 1925(c)(3) (appellate court may remand for filing of opinion when appellant, represented by counsel, fails to file timely court-ordered Rule 1925(b) statement, "such that the appellate court is convinced that counsel has been *per se* ineffective"). *See Commonwealth v. Jovich*, 309 MDA 2021 (unpub. memo. at 3-4) (Pa. Super. Aug. 6, 2021). Upon remand, the trial court complied with our directive, and, on August 9, 2021, entered an order in lieu of an opinion, referring this Court to its January 26, 2021, opinion disposing of Appellant's post-sentence motion. *See* Order, 8/9/21. We now proceed to a review of Appellant's substantive issues on appeal.

Appellant raises two claims for our review:

1. Were the [j]ury's verdicts of guilty as to counts I, II, and IV through VII not based on sufficient evidence to prove beyond a reasonable doubt that [Appellant] engaged in sexual contact with the alleged Victim?

2. Were the [j]ury's verdicts of guilty as to counts I, II, and IV through VII against the weight[ ] of the evidence because the [j]ury attributed too great a weight of credibility to the

- 5 -

testimony of the alleged Victim and the Commonwealth's witnesses?

Appellant's Brief at 5.

In his first clam, Appellant argues he is entitled to a judgment of acquittal. Appellant's Brief at 12. Appellant avers the Commonwealth "failed to present sufficient evidence at trial that he engaged in sexual acts" with Victim. *Id.* at 13.

Preliminarily, we caution Appellant that he must specify which elements of the particular crimes he is challenging on appeal, and "present arguments that are sufficiently developed for our review," or risk waiver. *See Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) (finding waiver where appellant undeveloped arguments impeded review on appeal). Here, Appellant's one-sentence argument is woefully underdeveloped. *See* Appellant's Brief at 13. However, because the facts of this case are straightforward, and we can discern Appellant's argument, we decline to find waiver in the present case. *See Commonwealth v. Laboy*, 936 A.2d 1058, 1059-60 (Pa. 2007) (stating appellant's argument was still amenable to review despite his argument failing to specify how the evidence was insufficient to convict him due to the simplicity of the facts of his case).

Our standard for reviewing sufficiency claims is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to

human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000) (citations omitted).

Further:

This Court has long-recognized "that the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense witnesses." "If the factfinder reasonably could have determined from the evidence adduced that all of the necessary elements of the crime were established, then that evidence will be deemed sufficient to support the verdict."

***Commonwealth v. Charlton***, 902 A.2d 554, 562 (Pa. Super. 2006) (citations omitted).

Appellant was convicted of the following offenses:

**§ 3122.1. Statutory sexual assault**

\* \* \*

**(b) Felony of the first degree.--**A person commits a felony of the first degree when that person engages in sexual intercourse with a complainant under the age of 16 years and that person is 11 or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S. § 3122.1(b).

**§ 3126. Indecent assault**

**(a) Offense defined.--**A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

- 7 -

* * *

(8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S. § 3126(a)(8).

**§ 4303. Endangering welfare of children.**

**(a) Offense defined—**

(1) A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

18 Pa.C.S. § 4304(a)(1).

**§ 6301. Corruption of minors**

**(a) Offense defined.--**

(1)(i) . . .

(ii) Whoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 commits a felony of the third degree.

18 Pa.C.S. § 6301(a)(1)(ii).

Here, the Commonwealth presented evidence in the form of video footage and testimony to support each of Appellant's convictions. We agree with the trial court that Victim's "descriptive" testimony provided sufficient evidence of each element of the convicted crimes. Trial Ct. Op.at 3-4. Victim described specific incidents and locations of sexual conduct where Appellant

touched Victim and engaged in both oral and vaginal intercourse with her, while knowing she was only 14 to 15 years old. N.T., Jury Trial, at 40, 42, 44-45. Victim's testimony alone, if believed by the jury, was sufficient to convict Appellant of the charged crimes. *See Charlton*, 902 A.2d at 562. We further agree with the trial court that video footage depicting Appellant "engaging in inappropriate acts [with Victim]. . . support[s] a finding that [Victim and Appellant] were engaged in a sexual relationship[.]" Trial Ct. Op. at 4. Viewing the evidence in the light most favorable to the Commonwealth, we conclude no relief is due. *See Widmer*, 744 A.2d at 751.

In his second claim, Appellant argues the trial court erred in denying his motion for a new trial because "the [j]ury placed too great a weight" on Victim's testimony. Appellant's Brief at 13. Appellant contends Victim "failed to provide specific details" of the incidents in her CRC interview. *Id.* at 14. He insists Victim's testimony that she was "jealous" of his relationship with M.P. "provided [Victim] a possible motive to fabricate allegations of a sexual relationship between" them. *Id.* Further, Appellant avers none of the Commonwealth witnesses were credible and his witnesses testified "they never observed [Appellant] engage in flirting or activities" suggesting a sexual relationship between himself and Victim. *Id.* at 14-15.

Our review of weight of the evidence claims is well settled:[3]

_____

[3] Appellant properly preserved his challenge to the weight of the evidence in a timely filed post-sentence motion. *See* Pa.R.Crim.P. 607(A)(3); Appellant's Consolidated Post Sentence Motions, 9/21/20, at 2.

On this issue, our role is not to consider the underlying question of whether the verdict was against the weight of the evidence. Rather, we are to decide if the trial court palpably abused its discretion when ruling on the weight claim. When doing so, we keep in mind that the initial determination regarding the weight of the evidence was for the factfinder. The factfinder was free to believe all, some or none of the evidence. Additionally, a court must not reverse a verdict based on a weight claim unless that verdict was so contrary to the evidence as to shock one's sense of justice.

***Commonwealth v. Habay***, 934 A.2d 732, 736-37 (citations omitted).

In disposing of Appellant's weight claim, the trial court opined:

[T]here is nothing shocking about the verdict reached by the jury and there is no evidence that certain facts were considered disproportionately. The Commonwealth presented evidence at trial, both direct and circumstantial, which ultimately led the jury, operating as the trier of fact, to reach a guilty verdict. Moreover, the jury was in the best position to analyze [V]ictim's credibility after hearing testimony presented [at trial. The jury was] able to observe [Victim's] demeanor while testifying and therefore able to form a sufficient basis to support a guilty verdict. Additionally, the jury considered the video clips of [Appellant and Victim] taken in [M.H.'s] apartment. These photos showed sexual contact between the two and depicted the two in intimate settings. Given these facts, it is not shocking at all that the jury reached a guilty verdict[.]

Trial Ct. Op. at 5.

We agree with the trial court's analysis, and Appellant has failed to demonstrate any abuse of discretion on the part of the trial court in denying his weight claim. ***See Habay***, 934 A.2d at 737. The jury simply believed Victim, which it was entitled to do. ***See id.*** Moreover, Appellant's witnesses, even if deemed credible, did not dispute Victim's claims. Rather, they simply

stated they did not witness any sexual encounters between Victim and Appellant. Thus, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/12/2021